RECEIVED
December 07, 2021
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: \_\_Michael Trujillo\_\_
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **BRANDON CALLIER,**<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>**AFG FUNDING, LLC,** a Florida Limited Liability Company and **MEHRDAD HERAVI** aka **SIA HERAVI**<br><br>　　　　　　　　　　Defendants. | §§§§§§§§§§§§§§§<br><br>EP-21-CV-00182-KC |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW PLAINTIFF BRANDON CALLIER with his First Amended Complaint and will allege and show as follows:

### PARTIES

1. Plaintiff BRANDON CALLIER ("Plaintiff" brings this Complaint and Demand for Jury Trial against Defendant AFG FUNDING, LLC and Defendant MEHRDAD HERAVI aka SIA HERAVI (together "Defendants") to stop calling Plaintiff's cellular telephone and to obtain redress as authorized by statute.

### NATURE OF ACTION

2. Defendants offer loans and business financing. As part of marketing their products and services, Defendants and their agents called Plaintiff's cell phone that used an auto dialing system.

3. Defendant makes unsolicited and unauthorized calls to consumers using auto dialing systems to market business loans and products.

1

4. Defendants did not obtain consent from Plaintiff prior to calling his cell phone, and Defendants are therefore liable under the Telephone Consumer Protection Act 47 U.S.C. § 227 (the "TCPA") and its implementing regulation, 47 C.F.R. § 64.1200(a)(2).

5. Congress enacted the TCPA in 1991 to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

6. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

7. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

8. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

9. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

10. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available

upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

11. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

12. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

13. The TCPA targets unauthorized texts exactly like the ones alleged in this case, based on Defendant's use of technological equipment to spam consumers on a grand scale without their consent.

14. By placing the calls at issue, Defendants have violated the privacy of Plaintiff and caused him to suffer damages that are recognized by statute.

15. Plaintiff therefore seeks an injunction requiring Defendants to stop texting his cell phone, as well as an award of actual and statutory damages, civil penalties, costs and reasonable attorneys' fees.

**PARTIES**

16. Plaintiff BRANDON CALLIER is a natural person and is a citizen of the Western District of Texas and was present in the Western District of Texas during all calls at issue in this case.

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

17. Defendant AFG FUNDING, LLC ("AFG") is a Limited Liability Company organized and existing under the laws of Florida and can be served via registered agent Arnold Lieberman, 1760 SW 68th Avenue, Plantation, Florida 33317

18. Defendant MEHRDAD HERAVI aka SIA HERAVI ("Heravi") is a natural person and Officer of APG FUNDING, LLC and can be served at 3150 SW 38TH Avenue, Suite #1316, Miami, Florida 33146.

## JURISDICTION AND VENUE

19. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal stature.

20. This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

21. This Court has personal jurisdiction over Defendants because they conduct business in this District, purposefully directed calls into the State of Texas and because the events giving rise to this lawsuit occurred in this District. Defendant "Heravi" personally participated in the calls and purposefully directed calls into Texas.

22. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendants regularly conducts business in the state of Texas and in this District, and because the wrongful conduct giving rise to this case occurred in this District.

## FACTUAL ALLEGATIONS

23. On November 12, 2019, Defendant AFG was sued in *Abante Roofer and Plumbing, INC v AFG Funding, LLC* case number 3:19-CV-07438 for violations of 47 U.S.C. 227.  Defendants are aware of the Do-Not-Call registry, the TCPA, and the regulations governing the TCPA.

24. Defendants have adopted TCPA violations as a part of their business model and knowingly and willfully commit TCPA violations.

25. Defendants are not bonded or registered with the Texas Secretary of State to solicit in Texas.

26. Plaintiff has been on the Do-Not-Call Registry since December 2007.

27. Defendant Heravi personally participated in the telemarketing and solicitation by calling Plaintiff and sending Plaintiff multiple text messages from his cell phone.

28. On January 15, 2021, Plaintiff received an automated call from Defendants from phone number (321) 245-5627.  Plaintiff answered the phone and said "hello" multiple times before the phone disconnected indicating the call was made with autodialing technology.  Plaintiff searched the phone number and determined this was a spoofed number.

29. On January 18, 2021, Plaintiff received a second phone call from spoofed phone number (321) 245-5627.  Plaintiff answered the phone and after a long pause was connected to an agent and/or employee of Defendant AFG with a thick Indian accent.  The AFG agent/employee did not ask for Plaintiff by name, but instead asked for the "Business Owner."

30. The agent/employee Defendant AFG Funding then solicited Plaintiff for business funding.  The agent/employee asked Plaintiff about his business income, debts, length of time in business and other information in order to qualify Plaintiff for a business loan.  The agent/employee then transferred Plaintiff to his "Funding Manager."  The call dropped while Plaintiff was speaking to the "Funding Manager"

31. On January 18, 2021, at 1:15 PM Plaintiff received another autodialed call from spoofed phone number (321) 245-5627.  Plaintiff answered the phone and was connected to another agent.  The call dropped.

32. On January 18, 2021, at 1:35 PM Plaintiff received a phone call from autodialed phone number (915) 383-4615.  Plaintiff answered the phone and it was Defendants using a spoofed caller ID to trick Plaintiff into answering the phone.  Defendants did not know Plaintiff or ask for Plaintiff by name.  It was another agent/employee of AFG Funding soliciting Plaintiff.   Plaintiff asked the Defendants to email him an application so he could figure out who had called him.

33. On January 18, 2021, at 1:40 PM Plaintiff received an email from Defendant Heravi using email address submissions@afgfunding.com.   The email from Defendant Heravi contained the website address, phone numbers for Heravi and AFG Funding, and a picture of Heravi. Exhibit A.

34. On January 18, 2021, at 1:57 PM Plaintiff received a fifth phone call from Defendants using spoofed phone number (915) 383-9945. Plaintiff answered the phone and after a delay was connected to an agent of the Defendants who again asked Plaintiff about his business funding needs.

35. On January 20, 2021, at 1:35 PM Plaintiff received a phone call from autodialed phone number (248) 237-7217.  Plaintiff answered the phone, and it was an agent and/or employee of Defendant AFG. Defendants did not know Plaintiff or ask for Plaintiff by name.  It was another agent/employee of AFG Funding soliciting Plaintiff.   Defendants sent Plaintiff another application as a result of this contact.

36. Defendants continued to call Plaintiff through January 2021 when the calls stopped.  Then in March 2021 Defendants began to again make unwanted calls to Plaintiff.  On one such occasion on June 30, 2021, Defendant Heravi again called and emailed Plaintiff.  Exhibit B.

37. Defendants and their agents and co-conspirators amassed lists of thousands of potential customers from public records, and data aggregators and then made calls using auto texting technology *en masse* to market their products.

38. Defendants participated in, facilitated, directed, authorized, knew of or willfully ignored the unlawful robo calling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robo texting.

39. Defendants have knowledge of and have adopted and maintained TCPA violations as a sales strategy.

40. Defendants refuse to take any action to stop or curtail the unlawful sales practices and robo calling because these practices benefit Defendants.

41. Defendants have been previously sued for TCPA complaints and still do not take actions to curtail the violations because they financially benefit the Defendants.

42. Defendant Heravi is an officer of Defendant AFG and personally authorized the calls and participated in the phone calls.

43. Defendants knew the calls were being directed into the Western District of Texas and the Defendants knew these actions could cause the Defendants to be summoned into court as a result of those actions.

44. Plaintiff never consented to receive the calls and texts alleged herein. Plaintiff had no relationship with Defendants prior to the texts alleged herein.

45. Defendant Heravi personally participated in the illegal calls by making calls and texts and sending emails to Plaintiff.

46. Plaintiff requested and was not delivered a copy of Defendants internal Do Not Call policy.

47. Plaintiff has not been sent a Do Not Call policy.

48. Defendant AFG called Plaintiff

49. Defendant AFG called again on October 21, 2021, months after Plaintiff had filed and served his Original upon Defendants AFG and Heravi demonstrating a lack of control and an adequate Do Not Call policy.

50. Defendants illegally recorded Plaintiff without his consent as required by Florida law.

51. Defendants made the following calls to Plaintiff:

| Date | Phone Number | Time of Call |
|---|---|---|
| 15-Jan-21 | 321-245-5627 | 12:08 PM |
| 18-Jan-21 | 321-245-5627 | 11:36 AM |
| 18-Jan-21 | 321-245-5627 | 1:15 PM |
| 18-Jan-21 | 915-383-4015 | 1:35 PM |
| 18-Jan-21 | 915-383-9945 | 1:57 PM |
| 19-Jan-21 | 915-383-9749 | 8:38 AM |
| 20-Jan-21 | 248-237-7217 | 9:37 AM |
| 20-Jan-21 | 248-237-7217 | 10:23 AM |
| 20-Jan-21 | 248-237-7217 | 12:03 PM |
| 20-Jan-21 | 248-237-7217 | 2:22 PM |
| 20-Jan-21 | 248-237-7217 | 3:38 PM |
| 20-Jan-21 | 915-383-5108 | 10:49 AM |
| 26-Jan-21 | 915-383-5733 | 12:46 PM |
| 18-Jan-21 | 305-992-6745 | 1:53 PM |
| 21-Jan-21 | 352-353-4076 | 9:31 AM |
| 27-Jan-21 | 352-353-4076 | 10:35 AM |
| 10-Mar-21 | 915-383-2330 | 1:59 PM |
| 11-Mar-21 | 915-383-3931 | 1:08 PM |
| 30-Jun-21 | 954-649-3699 | 11:58 AM |
| 6-Jul-21 | 863-884-8118 | 12:04 PM |
| 8-Jul-21 | 954-649-3699 | 9:12 AM |
| 21-Oct-21 | 352-623-6497 | 10:20 AM |

**The Texas Business and Commerce Code 305.053**

52. The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

53. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter

8

A and seek $500 in statutory damages or $1500 for willful or knowing damages.

## The Texas Business and Commerce Code 302.101

54. The Texas Business and Commerce Code requires sellers to obtain a registration certificate from the Office of the Secretary of State in order to make telephone solicitations from Texas or to consumers located in Texas.

55. Plaintiff may seek damages under Texas law for violations of § 302.101 of up to $5000 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, deposition costs, witness fees, and attorney's fees.

56. Texas Business and Commerce Code § 302.101 provides a private right of action.  A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce Chapter 302."  Tex. Bus. & Com. Code § 302.303.

57. The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish."  Tex. Bus. & Com. Code § 17.50.


## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

58. Defendants' calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

59. Defendants' calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

60. Defendants' calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

61. Defendants' calls harmed the Plaintiff by intruding upon Plaintiff's seclusion.

62. The Plaintiff has been harmed, injured, and damages by the calls including, but not limited to:

- Reduced Device Storage space
- Reduced data plan usage
- Invasion of privacy
- Lost time tending to text messages
- Decreased cell phone battery life
- More frequent charging of my cell phone resulting in reduced enjoyment and usage of my cell phone
- Reduced battery usage
- Annoyance
- Frustration
- Anger

### The Plaintiff's cell phone is a residential number

63. The calls were to the Plaintiff's cellular phone 915-245-4374, which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

64. In Strange v ABC Co. the Court noted:

"Some courts who have evaluated similar TCPA claims have dismissed them after concluding that Section 227(c)(5) does not encompass calls to cell phones, while other courts have required a plaintiff to present evidence establishing that he used his cell phone for residential purposes. See Strange v. Doe #1, No. 19-1096, 2020 U.S. Dist. LEXIS 8476, 2020 WL 2476545, *3 (W.D. La. May 12, 2020) (collecting cases). The Federal Communications Commission, which is the agency responsible for the TCPA's implementation, has observed this disconnect between the treatment of residential phones and has stated:

[W]e believe it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections. As indicated above, Congress afforded wireless subscribers particular protections in the context of autodialers and prerecorded calls. In addition, although Congress expressed [*10] concern with residential privacy, it also was concerned with the nuisance, expense and burden that telephone solicitations place on consumers. Therefore, we conclude, that wireless subscribers may participate in the national do-not-call list. As a practical matter, since determining whether any particular wireless subscriber is a "residential subscriber" may be more fact-intensive than making the same determination for a wireline subscriber, we will presume wireless subscribers who ask to be put on the national do-not-call list to be "residential subscribers." Such a presumption, however, may require a complaining wireless subscriber to provide further proof of the validity of that presumption should we need to take enforcement action.

In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14039 (2003) (footnotes omitted).

From this, the Court finds persuasive authority that plaintiffs, like Strange, who register their cell phones with do-not-call registries are presumed to be residential subscribers. However, the Court finds that Strange is still required to put forth evidence supporting this presumption, as he is seeking enforcement of section 227(c)(5) against the Defendants. See Cunningham [*11] v McDonald, No. 3:15-CV-215, 2018 U.S, Dist. LEXIS 201403, 2018 WL 6737418, *2 (M.D. Tenn. Nov. 5, 2018) ("While a person

utilizing a cellular phone may fall within the definition of a 'residential telephone subscriber' under the act, Plaintiff's pleadings allege only that calls were made to his cellular phone and he has pled no facts or offered evidence sufficient for the court to draw the conclusion that he has stated a cause of action under (c)(5)"); <u>Stevens-Bratton v. TruGreen, Inc.</u>, 437 F. Supp. 3d 648, 655 (W.D. Tenn. Feb. 4, 2020) ("Courts have interpreted the 'residential telephone subscriber' element to require proof the number called was used for 'residential purposes,' ") <u>Cunningham v. Rapid Capital Funding, LLC/RCF</u>, No. 3:16-CV-2629, 2017 U.S. Dist. LEXIS 136951, 2017 WL 3574451, *3 (M.D. Tenn. July 27, 2017) ("While this Court has suggested that calls to a cell phone may be construed as calls to a residential telephone, the plaintiff must plead facts showing the cell phone is used for *residential purposes*." (emphasis in original)).  Thus, Strange cannot prevail under Section 227(c)(5) without sufficient proof that he used his cell phone for residential purposes." *Strange v. ABC Co.*, No. 19-1361, 2021 U.S. Dist. LEXIS 38882 *; 2021 WL 798870.

65. 47 C.F.R. § 64.2305(b) defines a business subscriber as a subscriber to a telephone exchange service for businesses.

66. 47 C.F.R. § 64.2305(d) defines a residential subscriber as a subscriber to a telephone exchange that is not a business subscriber.

67. Plaintiff's cell phone is not a business subscriber and is therefore a residential subscriber.

## FIRST CAUSE OF ACTION

Willful and/or Knowing Violation of 47 U.S.C. § 227
Telephone Consumer Protection Act of 1991
(Against all Defendants)

68. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

69. Defendants and/or their agents placed calls to Plaintiff's cellular telephone.

70. Plaintiff never consented to receive calls from Defendants.  Plaintiff has no relationship with Defendants.

71. Defendants' calls were made for purposes of advertising and marketing Defendants' business funding services.  These calls constituted commercial advertising and telemarketing as contemplated by the TCPA.

72. The calls were made using an auto dialing technology to the cellular phone of Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

73. As a result of their unlawful conduct, Defendants repeatedly invade the personal privacy of consumers like Plaintiff, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendants to stop their unlawful texting campaigns.

74. Not only did Defendants make these violating calls, Defendants and/or their agents did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

75. If the Court finds that Defendants willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

**SECOND CAUSE OF ACTION**
**Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)**
**(Against All Defendants)**

76. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

77.  The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

a. written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1) [2];

b. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2) [3]; and,

c. in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

78. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

79. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

### THIRD CAUSE OF ACTION
**Violations of The Texas Business and Commerce Code 305.053**

80. Plaintiff incorporates the foregoing allegations as if set forth herein.

81. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robo calls to Mr. Callier's cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendant violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an automated dialing system that does not comply with the technical and procedural standards under this subsection.

82. Plaintiff is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

83. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c).

## THIRD CAUSE OF ACTION
**Violations of The Texas Business and Commerce Code 302.101**

84. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

85. §302.101 of the Texas Business & Commerce Code prohibits sells from engaging in telephone solicitation from a location in this state or to a purchaser located in this state unless the seller obtains a registration certificate from the Office of the Secretary of State for the business location from which the solicitation is made.

86. Defendant violated § 302.101 of the Texas Business & Commerce Code when its representatives engaged in continuous and repetitive telephone solicitation of Plaintiff without a registration certificate from the Office of the Secretary of State.

87. 302.302(a) of the Texas Business & Commerce Code provides that a person who

88. violates this chapter is subject to a civil penalty of no more than $5000 for each violation. Furthermore, §302.302(d) provides that the party bringing the action is also entitled to recover all reasonable costs of prosecuting the action, including court costs, investigative costs, deposition expenses, witness fees and attorney fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the Defendant jointly and severally as follows:

    A.    Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.   A declaration that actions complained of herein by Defendant violates the TCPA and Texas state law;

C.   An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.   An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for 21 calls.

E.   An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F.   An award to Mr. Callier of damages, as allowed by law under the TCPA;

G.   An award to Mr. Callier of interest, costs and attorneys' fees, as allowed by law and equity

H.   Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

December 7, 2021                                       Respectfully Submitted,

*Brandon Callier*

Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail Drive
El Paso, Texas 79912
915-383-4604