FILED
January 12, 2022
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: Michael Trujillo
DEPUTY

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **BRANDON CALLIER,** § § § § **Plaintiff,** § § v. § § **AFG FUNDING, LLC,** a Florida Limited Liability § Company and **MEHRDAD HERAVI** aka **SIA** § **HERAVI** § § **Defendants.** § § | **EP-21-CV-00182-KC** |

**PLAINTIFF'S RESPONSE TO DEFENDANTS AFG FUNDING, LLC AND MEHRDAD HERAVI'S AMENDED MOTION TO DISMISS PLAINTIFF FIRST AMENDED COMPLAINT PURSUANT TO RULE OF CIVIL PROCEDURE 12(b)(6)**

COMES NOW PLAINTIFF BRANDON CALLIER with his Response to Defendant AFG Funding, LLC and Mehrdad Heravi's Amended Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Rule of Civil Procedure 12(b)(6). Plaintiff would respectfully show the following:

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff received the first of at least 22 unsolicited phone calls from the Defendants on January 15, 2021. Plaintiff filed his original Complaint against the Defendants on August 9, 2021, alleging violations of the Telephone Consumer Protection Act ("TCPA") 47 U.S.C. § 227(b)(1)(A)(iii), Delivery Restrictions 47 C.F.R. § 64.1200 ("Delivery Restrictions"), and § 302.053 and 302.101 of the Texas Business and Commerce Code. On August 12, 2021, Defendant Mehrdad Heravi ("Heravi") and AFG Funding, LLC ("AFG") were served with the Summons and Original Complaint. Plaintiff filed his First Amended Complaint on December

16, 2021, alleging the same TCPA, Delivery Restrictions, and Tex. Bus. and Com. Code violations from the Original Complaint. On January 7, 2022, Defendants AFG and Heravi, through counsel filed a motion to dismiss Plaintiff's TCPA, Delivery Restrictions, and Tex. Bus. and Com. Code § 302.053 claims without addressing or asking the Court to dismiss Plaintiff's Tex. Bus. Com. Code § 302.101 claims.

## II. PLAINTIFF'S CELL PHONE IS A "RESIDENTIAL PHONE"

### A. *Considering Plaintiff's cellular phone as a "residential" phone is consistent with both case law and the intent of the Federal Communications Commission's interpretation and implementation of the law*.

Citing Fifth Circuit precedent which determined cell phones are "residential" in *Callier v. Multiplan, Inc. et al*. the Court noted "The TCPA 'expressly covers" calls placed to cell phones. Section 227(b)(1)(A)(iii) makes it "unlawful for any person' to make a call "to any telephone number assigned to a … cellular telephone service" without consent. Although it is true that §§ 227(b)(1)(B) and 227(c) regulate calls made to 'residential' numbers, Defendants' reading is foreclosed by binding circuit precedent. In *Cranor,* the Firth Circuit held that the TCPA protects against calls made to cellphones, even though the statute uses the term 'residential numbers." *Cranor*, 998 F. 3d at 691. Citing § 227(b)(1)(A)(iii), which prohibits calls to cell phones, the *Cranor* panel rejected Defendants' reading, holding that if Congress was exclusively concerned with protecting privacy within the home, as Defendants contend, 'it would make little sense to prohibit telemarketing to mobile devises designed for use *outside the home*." *Id*. Alternatively, Defendants suggest the plain meaning of the statutory text and the structure of the TCPA support reading § 227(b) as the exclusive protection for cellphones…as discussed above, binding Fifth Circuit precedent has forecloses this argument. *Callier v. Multiplan, Inc*., EP-21-CV- 00318-FM (W.D. Tex. Aug. 26, 2021).

Fifth Circuit precedent is binding upon this Court and forecloses the Defendants argument that Plaintiff's cell phone does not have protection under 227(c). Further, the FCC's interpretation of the statute allows "residential" status to cell phones registered on the National Do-Not-Call Registry. It is well settled that courts must "give binding deference to permissible agency interpretations of statutory ambiguities because Congress has delegated to the agency the authority to interpret those ambiguities 'with the force of law." *City of Arlington v. FCC*, 569 U.S. 290, 317 (2013) (Roberts, C.J. dissenting) (quoting *United States v Mead Corp*., 533 U.S. 218, 229 (2001). The TCPA expressly directs the FCC "to prescribe implementing regulations." *Mims*, 565 U.S. at 371; *see also* TCPA § 227(b)(2). As the FCC is responsible for implementing the TCPA, its interpretations of the statutory text warrants deference unless it is clearly unreasonable. See *City of Arlington*, 569 U.S. at 296. The FCC has interpreted the TCPA "to allow wireless subscribers to benefit from the full range of TCPA protections." *See In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Red 14014, 63 (F.C.C. June 26, 2003). *Callier v. Multiplan, Inc*., EP-21-CV- 00318-FM (W.D. Tex. Aug. 26, 2021).

In *Strange v ABC Co*. the Court noted:
> "Some courts who have evaluated similar TCPA claims have dismissed them after concluding that Section 227(c)(5) does not encompass calls to cell phones, while other courts have required a plaintiff to present evidence establishing that he used his cell phone for residential purposes. See *Strange v. Doe #1*, No. 19-1096, 2020 U.S. Dist. LEXIS 8476, 2020 WL 2476545, *3 (W.D. La. May 12, 2020) (collecting cases). The Federal Communications Commission, which is the agency responsible for the TCPA's implementation, has observed this disconnect between the treatment of residential phones and has stated:
>> [W]e believe it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections. As indicated above, Congress afforded wireless subscribers particular protections in

3

the context of autodialers and prerecorded calls. In addition, although Congress expressed [*10] concern with residential privacy, it also was concerned with the nuisance, expense and burden that telephone solicitations place on consumers. Therefore, we conclude, that wireless subscribers may participate in the national do-not-call list. As a practical matter, since determining whether any particular wireless subscriber is a "residential subscriber" may be more fact-intensive than making the same determination for a wireline subscriber, we will presume wireless subscribers who ask to be put on the national do-not-call list to be "residential subscribers." Such a presumption, however, may require a complaining wireless subscriber to provide further proof of the validity of that presumption should we need to take enforcement action.

In *Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) (footnotes omitted).

From this, the Court finds persuasive authority that plaintiffs, like Strange, who register their cell phones with do-not-call registries are presumed to be residential subscribers. However, the Court finds that Strange is still required to put forth evidence supporting this presumption, as he is seeking enforcement of section 227(c)(5) against the Defendants. *See Cunningham [*11] v McDonald,* No. 3:15-CV-215, 2018 U.S, Dist. LEXIS 201403, 2018 WL 6737418, *2 (M.D. Tenn. Nov. 5, 2018) ("While a person utilizing a cellular phone may fall within the definition of a 'residential telephone subscriber' under the act, Plaintiff's pleadings allege only that calls were made to his cellular phone and he has pled no facts or offered evidence sufficient for the court to draw the conclusion that he has stated a cause of action under (c)(5)"); *Stevens-Bratton v. TruGreen, Inc.,* 437 F. Supp. 3d 648, 655 (W.D. Tenn. Feb. 4, 2020) ("Courts have interpreted the 'residential telephone subscriber' element to require proof the number called was used for 'residential purposes,' ") *Cunningham v. Rapid Capital Funding, LLC/RCF,* No. 3:16-CV-2629, 2017 U.S. Dist. LEXIS 136951, 2017 WL 3574451, *3 (M.D. Tenn. July 27, 2017) ("While this Court has suggested that calls to a cell phone may be construed as calls to a residential telephone, the

4

plaintiff must plead facts showing the cell phone is used for *residential purposes*." (emphasis in original)). Thus, Strange cannot prevail under Section 227(c)(5) without sufficient proof that he used his cell phone for residential purposes." *Strange v. ABC Co.*, No. 19-1361, 2021 U.S. Dist. LEXIS 38882 *; 2021 WL 798870.

B. **The type of phone subscription is determined by the use and purpose of the phone and not by how the service is delivered.  Case Law and the FCC definition of "residential subscribers" includes cell phones not used for business purposes.**

Whether a phone is a residential or business phone is not determined by how the phone service is delivered.  Phone service can be delivered via a wired landline or a wireless cellular or mobile phone.  The type of delivery does not determine whether a phone is a business or residential subscriber.  The use of the phone, whether for business or personal reasons, it what determines the nature of a phone subscription.  This is inherent in the FCC defining two types of phone subscriptions: business or residential.  This is also inherent in the Defense's assertion that Plaintiff's cell phone is a business phone because he incorrectly alleges Plaintiff uses his phone for business.  Defendant has acknowledged it is the use of the phone that determines whether the phone is a "business" or "residential" phone.

47 C.F.R. § 64.2305(b) defines a business subscriber as a subscriber to a telephone exchange service for businesses.  47 C.F.R. § 64.2305(d) defines a residential subscriber as all phones that are "a subscriber to a telephone exchange service that is not a business subscriber."  As noted above in *Strange v. ABC Co.* the Courts have defined a residential subscriber to include cellular phones where the Plaintiff has demonstrated the phone is used for residential purposes.  Plaintiff has alleged and put forth evidence his cellular phone is used for residential purposes. .  As noted in *Strange v ABC Co.* the FCC has determined cellular phone do indeed have residential telephone subscriber protections if the registering party registers his cell phone to the do-not-call registry and provides evidence his phone is used for residential purposes.  Plaintiff in

this case has both registered his cell phone to the do-not-call registry and asserted evidence his phone is a residential phone.

### C. Not recognizing cell phones as residential phones would be contrary to Congress' intent to provide consumers with protection under the law.

Congress' intent is to protect as many consumers under the law as possible from annoying and unwanted telemarketing calls. The fact Congress passed the TCPA is testament to this principle. If Congress wanted to draw a hard distinction between types of phone service Congress would have used "landline" and "wireless" when writing the law. As the Court recently noted in *Strange v ABC Co.*, the FCC said "[W]e believe it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections…. Therefore, we conclude, that wireless subscribers may participate in the national do-not-call list… we will presume wireless subscribers who ask to be put on the national do-not-call list to be "residential subscribers." *Strange v. ABC Co.*, No. 19-1361, 2021 U.S. Dist. LEXIS 38882 *; 2021 WL 798870.

The practical matter is not recognizing cell phones as "residential" phones would be going against the interpretation of the FCC and not recognizing the changing landscape of how telephone services are delivered. When Congress passed the TCPA landlines were prevalent in nearly every American household. Now recent studies put the number of landlines in households at between 10 and 37%. 10s of millions of Americans no longer subscribe to a landline. Not following the FCC's recent ruling that cell phones have status as "residential phones" would be to deny millions of Americans the protection Congress intended for them to have from persistent, harassing, annoying telemarketers

### III.   FACEBOOK IS NOT APPROPRIATELY APPLIED AT THE PLEADING STAGE

Defendants are asking the Court to dismiss Plaintiff's claims under 227(b)(1)(A)(iii)

asserting Plaintiff's claims cannot survive after *Facebook*. However, this standard is unreasonable at this point in the proceedings. Plaintiff has no way of knowing or determining the technical capabilities of the Defendants dialing technology without the benefit of discovery. Numerous decisions after *Facebook* have affirmed this standard. In this very district the Court noted:

> "To require Plaintiff to plead the specifics of the technology used to place harassing calls would raise the pleading standard for TCPA claims impermissibly high. To allege a violation of the TCPA, Plaintiff need only allege facts that reasonably suggest Defendants used ATDS technology to call Plaintiff. Plaintiff claims Defendants relied on ATDS to call him on his cell phone. This puts Defendants on "fair notice of what the claim is and the grounds upon which it rests." It also reflects the totality of information a recipient of unwanted automated calls can be reasonably expected to possess. As other courts have noted, it is impracticable to expect plaintiffs to plead specific facts about a telemarketer's technological processes before they have the benefit of discovery."
>
> This court does not read Facebook to require TCPA plaintiffs to plead "dead-airtime." Rather, the court understands the Supreme Court to have established that district courts evaluating TCPA claims must engage with a question of material fact: whether the calls underlying the claim are attributable to a "random or sequential number generator." If they are not, then ATDS technology was not involved, and the claim fails as a matter of law. This is properly addressed on summary judgment. Accordingly, the court will not dismiss Plaintiff's clam under § 227(b)(1)(A)(iii). *Callier v. Multiplan, Inc.*, EP-21-CV-00318-FM (W.D. Tex. Aug. 26, 2021).

Similarly in *Gross v GG Homes, Inc.* the Court said:

> "The newly clarified definition of an ATDS is more relevant to a summary judgment motion that at the pleading stage. See *Montanez v Future Vision Brain Bank, LLC*, 20-cv-02959-CMA-MEH, 2021 WL 1697928, at *7 (D. Colo. Apr. 29, 2021)…While additional facts details about Defendant's equipment might be helpful, they are not required at the pleading stage. *See In re Jiffy Lube Int'l Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1260 (S.D. Cal. 2012). At this stage of the proceedings, particularly under notice pleading standards of Rule 8(a)(2) of the Federal Rules of Civil Procedure, which requires only a "short and plain statement of the claim," Plaintiff need not include additional details concerning the process by which Defendant's device stores and produces phone numbers. Plaintiff need not describe technical details of Defendant's alleged ATDS at this stage. This issue is appropriately addressed following discovery and on a motion for summary judgment. *Gross v. GG Homes, Inc.*, 3:21-cv-00271-DMS-BGS (S.D. Cal. Jul. 8, 2021)

Facebook is not appropriately applied at the pleading stage and Plaintiff's motion to dismiss Plaintiff's claims under 227(b)(1)(A)(iii) should be upheld.

### IV. MISCELLANEOUS IMPLIED DEFENSES IN DEFENDANTS' MTD

Defendants assert "Plaintiff" had engaged Defendants' agents and sought to be qualified for a business loan. Plaintiff even provided Defendant with his email address and asked for further contact." However, Defendants do not assert that Plaintiff ever at anytime initiated contact with the Defendants and asked Defendants to call him. This would be an affirmative defense that would provide Defendants with immunity from Plaintiff's Complaint. Defendants fail to make this affirmative defense because it never happened. Further, Plaintiff having to provide an email address because the Defendants failed to properly identify themselves, and the company on whose behalf they were calling, is an indictment of the Defendants telemarketing safeguards and an indication of Defendants violation of 47 C.F.R. § 64.1200(d)(4). Defendants cannot use Plaintiff taking reasonable steps to determine who was anonymously calling Plaintiff, as a cure for the Defendants original sin of calling Plaintiff.

Defendants state "that Defendants use a specific strategy to determine who to call indicates that Plaintiff's telephone number was not randomly or sequentially generated; it was intentionally selected based on criteria identified by Defendants." Defendants Amended MTD Dkt. 16. As Plaintiff noted in his First Amended Complaint, Defendants' agent called Plaintiff again on October 21, 2021. First Amended Complaint ¶ 49. The representative did not ask for Plaintiff by name and had no idea Plaintiff had ever been previously contacted by Defendants. The Defendants representative sent Plaintiff an email memorializing the phone call. Plaintiff has a recording of the phone call consistent with Texas law.

8

Taking as true the Defendants assertion that phone calls are actively determined by a "specific strategy to determine who to call," the Defendants intentionally contacted Plaintiff on October 21, 2021, in order to harass Plaintiff. This phone call was made months after Plaintiff had filed his Original Complaint and served it upon the Defendants. The Defendants very own statement indicates they knowingly and willfully targeted Plaintiff with a harassing phone call that came months after Plaintiff had sued the Defendants, all Defendants had retrained counsel, and Counsel had begun to litigate Plaintiff's claims.

Alternatively, the Defendants contacted Plaintiff on October 21, 2021, via an automated phone call and did not know they were contacting the Plaintiff. The representative that contacted Plaintiff did not ask for Plaintiff by name. The representative did not know Plaintiff's business. The representative did not have any identifiable information when it randomly called Plaintiff. The fact the Defendants called Plaintiff after Plaintiff filed a Complaint against the Defendants is proof Defendants lack a written do-not-call policy as required by 47 C.F.R. § 64.1200(d)(1) and Defendants lack training for their employees as required by 47 C.F.R. § 64.1200(d)(2).

The Defendants very own words indicated they purposefully directed a harassing phone call at Plaintiff on October 21, 2021, or the Defendants used a random number generator that autodialed Plaintiff on October 21, 2021, and the Defendants lack the very telemarketing safeguards the Plaintiff alleges under 47 C.F.R. § 64.1200(d). Plaintiff emailed the Defenses attorney on October 21, 2021 and forwarded him the email received from the Defendants telemarketer after the telemarketer called Plaintiff on behalf of the Defendants.

Notably Defendants do not refute Plaintiff's ascertain that Plaintiff requested and was not sent a copy of the Defendants internal do-not-call policy. First Amended Complaint ¶ 46-47.

V.   **PLAINTIFF'S TEX. BUS. COM. CODE CLAIMS**

Defense does not refrute or offer any defense of Plaintiff's claims under Texas Business and Commerce Code 302.101.  Nor does the Defense ask the Court to dismiss these claims as part of Defense's Motion to Dismiss.  The Court should affirm Plaintiff's Tx. Bus. Com. Code 302.101 claims.  Defense does not claim any exemptions, claim to have a valid registration certificate or state any affirmative defenses.

Plaintiff's claims under Texas Business and Commerce Code 305.053 should be upheld as they derive from Plaintiff's 47 U.S.C. § 227(b)(1)(A)(iii) and Delivery Restrictions 47 C.F.R. § 64.1200 claims.  For the reasons stated herein, Plaintiff's 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200 should not be dismissed.

## VI.   CONCLUSION

Defendants' Motion to Dismiss should be denied in its entirety.  Plaintiff's cell phone is a residential phone based on binding a binding Fifth Circuit ruling, FCC interpretation and previous case law.  Facebook is not appropriately applied at the pleading stage as Plaintiff has not had the benefit of discovery and is more appropriately applied at the summary judgment stage.  Defendants do not ask the Court to dismiss Plaintiff's Tex. Bus. and Com. Code 302.101 claims and the Court should affirm these claims.

Dated January 11, 2022

Respectfully submitted,

*Brandon Callier*

Brandon Callier
6336 Franklin Trail Drive
El Paso, TX 79912
Callier74@gmail.com
915-383-4604